[No. 45678.    En Banc.    March 15, 1979.]

RUTH SAUVE, *Respondent,* v. K.C., INC., ET AL,
*Appellants,* JAMES O. FLYNN,
ET AL, *Petitioners.*

*Steinberg & Steinberg, Jack Steinberg,* and *Robert Kuvara,* for petitioners.

*Siderius, Lonergan & Crowley* and *Patrick Crowley,* for respondent.

DOLLIVER, J.—Petitioners, officers of defendant corporation K. C., Inc., seek review of a decision of the Court of Appeals (*Sauve v. K.C., Inc.,* 19 Wn. App. 659, 577 P.2d 599 (1978)), which affirmed the trial court judgment for plaintiff.

K. C., Inc., operated a retail appliance store which leased household appliances to consumers with an option to purchase at the end of the lease period. The corporation and its principal officers financed their operation by obtaining $250,000 in loans from 45 individuals. Plaintiff, a widow, was interested in making an investment which would assure her a greater rate of interest than was available from a savings institution. In April 1972, she loaned $15,120 to the corporation in exchange for 84 documents entitled "Security Agreement (Conditional Sales Contract)". The documents purported to represent plaintiff's security interest in the new appliances which had been purchased with her money. Each document provided that, for the first 3 years following the date of the loan, the corporation was to pay plaintiff the interest due on the loan at a rate of 12 percent per annum, payable monthly, and that, at the expiration of this 3-year period, it was to repay the entire principal.

Plaintiff was told that, in the event the corporation defaulted on the interest payments, she could declare the entire principal immediately due or commence proceedings to repossess the appliances.

For 2 1/2 years the corporation paid plaintiff her monthly interest check. Five of those checks were dishonored by the bank which constituted a default under the agreement, and plaintiff demanded payment of the entire principal. The corporation paid only half of the principal, however, in exchange for Mrs. Sauve's return of half of the

documents. The corporation went into voluntary bankruptcy in 1976. Plaintiff did not attempt to repossess the remaining appliances since she had no warehouse in which to store them. She thereafter brought an action against the corporation and its officers. The action alleged, *inter alia,* a violation of The Securities Act of Washington (RCW 21.20) because neither the corporation nor the individuals acting on its behalf were registered as securities salespersons, nor were the documents registered as securities under the act.

■ RCW 21.20.005(12) defines a "security" as follows:

"Security" means any note; stock; treasury stock; bond; *debenture; evidence of indebtedness;* certificate of interest or participation in any profit–sharing agreement; *collateral–trust certificate;* preorganization certificate or subscription; transferable share; *investment contract;* voting–trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing; or any sale of or indenture, bond or contract for the conveyance of land or any interest therein where such land is situated outside of the state of Washington and such sale or its offering is not conducted by a real estate broker licensed by the state of Washington. "Security" does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay money either in a lump sum or periodically for life or some other specified period.

(Italics ours.) This definition is taken from the federal Securities Act of 1933, 15 U.S.C. § 77a *et seq.* (1976), and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1976). The definition of a security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits". *Securities & Exch. Comm'n v. W.J. Howey Co.,* 328 U.S. 293, 299, 90 L. Ed. 1244, 66 S. Ct.

1100, 163 A.L.R. 1043 (1946). In determining whether a given transaction constitutes a "security" within the meaning of these statutes, form should be disregarded for substance, and the emphasis should be on economic reality. *Tcherepnin v. Knight,* 389 U.S. 332, 336, 19 L. Ed. 2d 564, 88 S. Ct. 548 (1967).

The trial court concluded that the transaction was a "collateral–trust certificate" by examining the separate definitions of "collateral" and "trust" contained in Black's Law Dictionary 327, 1680 (4th ed. rev. 1968). Petitioners argue that a collateral trust is one in which a debtor deposits stocks, bonds or other collateral with a third party to act as trustee, and that the trial court erred in defining a collateral trust to include the transaction negotiated here.

The Court of Appeals did not refer to the trial court's finding on the nature of the agreement as a collateral trust certificate. Instead, it focused on the purposes of the securities laws and the circumstances surrounding the transaction. Applying what has come to be known as the "risk capital" approach, it analyzed the agreement and concluded that plaintiff's outlay of funds combined with the corporation's unencumbered rights in the collateral constituted a security as contemplated by the act.

While we agree that the transaction entered into by Mrs. Sauve was a "security" within the meaning of RCW 21.20-.005(12), we do not follow the "risk capital" approach of the Court of Appeals. Rather, our holding is based upon the test in *Securities & Exch. Comm'n v. W.J. Howey Co., supra,* which was recently adopted by this court in *McClellan v. Sundholm,* 89 Wn.2d 527, 531–32, 574 P.2d 371 (1978):

> We choose to employ the federal [*Howey*] test for two reasons. First, as noted above, the Washington statutory definition is derived substantially from the federal statute. This is strong evidence that the intent of the legislature was to adopt existing federal law relating to the definition. Second, the federal test is widely used by state agencies and courts interpreting state securities acts. *See* Annot., *What Constitutes an "Investment Contract"*

*Within the Meaning of State Blue Sky Laws,* 47 A.L.R.2d 1375, 1379 (1973).

*McClellan* was not cited by the Court of Appeals in its analysis of this transaction under the "risk capital" approach.

The "risk capital" approach used by the Court of Appeals requires only that risk capital be supplied with a reasonable expectation of a valuable benefit but without the right to control the enterprise. *Silver Hills Country Club v. Sobieski,* 55 Cal. 2d 811, 361 P.2d 906, 13 Cal. Rptr. 186 (1961); *Securities & Exch. Comm'n v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476 (9th Cir. 1973). It has been adopted in California, Hawaii, Idaho, Oregon and Alaska (by statute), as well as by the Ninth Circuit. *See* Comment, *Securities Fraud Under the Blue Sky of Washington,* 53 Wash. L. Rev. 279, 286 (1978). The United States Supreme Court has not, however, replaced the *Howey* test. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 852–53, 44 L. Ed. 2d 621, 95 S. Ct. 2051 (1975). Nor do we now. *Howey,* not "risk capital", is the rule in Washington.

Does the transaction in this case come under *Howey?*

■ Under *Howey,* there must be "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Howey,* at 298–99. *Howey* thus requires: (1) an investment; (2) a common enterprise; and (3) an expectation of profits from the efforts of another. Plaintiff's loan of $15,120 to K. C., Inc., was clearly an investment in its leasing business. The "common enterprise" requirement is met by the interdependence of fortunes. *McClellan v. Sundholm, supra.* Plaintiff depended upon the efforts of petitioners and others to find lessees for the appliances which her funds purchased. The only remaining question is whether the contemplated interest payments constitute an expectation of profit within the meaning of the *Howey* test. Petitioners argue they do not.

In *El Khadem v. Equity Sec. Corp.,* 494 F.2d 1224 (9th

Cir. 1974), plaintiff borrowed money from defendant to purchase mutual funds which were then pledged as collateral. Plaintiff also pledged cash collateral and prepaid the interest due. Defendant was given the power to rehypothecate plaintiff's collateral and assign her promissory note to finance its own business purposes. In return, plaintiff received a tax advantage and investment leverage in anticipation of a rising market. The court held the plaintiff had loaned capital to the defendant in exchange for a financial incentive which constituted a profit:

> It is true that unlike the situation in *Howey,* the financial gain for Ms. El Khadem did not vary from year to year depending on the skill with which Nationwide [the defendant] managed her collateral. Rather, only the risk of loss varied with Nationwide's management skills. But this distinction between the Nationwide plan and the *Howey* plan is without significance when determining whether the plan is a security. The distinction is precisely that between a common stock and a corporate bond, yet a corporate bond is not for that reason excluded from the definition of a security. Therefore, the fact that Ms. El Khadem's "profit" was constant while her risk of loss depended on Nationwide's management skills does not remove the plan from the definition of a security.

(Footnote omitted.) *El Khadem,* at 1229.

Here, plaintiff anticipated a fixed interest rate which would be paid to her as the result of the petitioners' efforts on behalf of K. C., Inc. This interest rate was to be significantly greater than that received in a savings and loan account where plaintiff had previously invested her money. Additionally, she risked the loss of all of her investment should petitioners' management skills fail to keep the business profitable. This transaction meets and exceeds the nature of the "security" which the court found in *El Khadem* and satisfies the third requirement of *Howey.* The agreement between plaintiff and K. C., Inc., meets the requirements of *Howey* and is a "security" under RCW 21.20.005(12).

The finding of the trial court that the petitioners violated The Securities Act of Washington is affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, HICKS, and WILLIAMS, JJ., concur.