Daniel C. WINKLER and Genevieve Winkler, and the marital community composed thereof, Plaintiffs,

v.

TRICO FINANCIAL CORPORATION, et al., Defendants.

No. C85–2456R.

United States District Court, W.D. Washington, at Seattle.

Nov. 19, 1987.

On Motion for Final Judgment and Reconsideration Jan. 7, 1988.

Thomas H. Fain, Williams, Kastner & Gibbs, Bellevue, Wash., for plaintiffs.

James N. Jory, Jr., Kargianis & Austin, Seattle, Wash., for defendants.

Sheldon Barr, New York City, pro se.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AGAINST DEFENDANTS BARR AND BELL

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on three motions filed by plaintiff: (1) motion for partial summary judgment for failure to register securities, (2) motion for summary judgment against defendant Bell, and (3) motion for summary judgment against defendant Barr.[1] Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTS

On December 27, 1982, Plaintiffs Daniel and Genevieve Winkler ("the Winklers") leased an Energy Brain from defendant Saxon Energy Corporation ("Saxon"). According to Saxon's promotional materials, the Energy Brain is a sophisticated, highly comprehensive computer which controls and monitors energy input for heating, air conditioning, and electrical usage. *See* Exhibit 10, Henrie Affidavit ("Frequently Asked Questions About the Energy Brain Equipment Leasing Program"). The Winklers had no prior experience with comput-

ers designed to conserve energy; they leased the Energy Brain as an investment.

The promotional materials given to investors described how three corporations, through arms-length transactions, produced, marketed, and managed the Energy Brain. *See* Exhibits 10, 11, 12, 13, and 14, Henrie Affidavit. Enersonics, Inc. manufactured the Energy Brain and sold the units to Saxon in exchange for recourse promissory notes due in 25 years. Saxon leased the Energy Brain to individual investors and as allowed under the tax code, transferred substantial energy tax credits to the lessees. Finally, to aid investors' management of the Energy Brains, Saxon referred investors to ALH Energy Management Corporation ("ALH"), a company which installed and operated the Energy Brains. Defendant Barr was secretary of Enersonics, defendant Bell was Saxon's marketing representative for the West Coast.

Plaintiffs allege that rather than offering a legitimate investment in energy conservation, these three corporations were mere shells, used by defendants to defraud investors. Plaintiffs now move for summary judgment against defendants Barr and Bell, and for partial summary judgment for failure to register the Energy Brain Leasing Program as a security under the Washington State Securities Act, RCW 21.20.-140.

## II. DISCUSSION

### A. STANDARD OF REVIEW

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809

---

**1.** Plaintiffs have also moved for a judgment of default against defendant Barr for failing to comply with the court's discovery order. Since defendant Barr acknowledges his obligation to submit to discovery, plaintiffs' motion for default is STRICKEN with leave to renote in the event of further non-compliance. Defendant Barr has also filed a cross-motion for dismissal

of plaintiffs' complaint. The court finds that defendant submitted this motion nearly one and one-half months after the final date for filing motions had elapsed. In addition, defendant's fifty-four page memorandum violates Civil Rule 7(c) of the Local Rules for Western District of Washington. The court accordingly STRIKES defendant's motion to dismiss.

F.2d 626, 630–631 (9th Cir.1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981).

The Ninth Circuit in *T.W. Electrical Service* recently refined the standard for determining genuine issues of material fact.

> Whether a "genuine issue" can be said to exist with respect to a material fact is often a close question ... If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment. Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.

*T.W. Electrical Service,* 809 F.2d at 630 (emphasis original, citations omitted).

### B. FAILURE TO REGISTER

Plaintiff contends that defendants Barr and Bell violated RCW 21.20.140 by failing to register the Energy Brain Leasing Program as a security. Under Washington law,

> [i]t is unlawful for any person to offer or sell any security in this state ... unless such security is registered by coordination or qualification under this chapter.

RCW 21.20.140. Plaintiffs allege first that the Energy Brain Equipment Leasing Program was both an investment contract and under state and federal law, a security. Second, plaintiffs contend that defendants failed to register this security as required by state law. Third, since defendants Barr and Bell, according to plaintiffs, offered or sold the unregistered security to state residents, defendants are liable under RCW 21.20.430(1) for civil damages.

In response, defendant Bell acknowledges that he sold the Energy Brain Program through various agents in Washington state, however, he alleges that the lease agreement was not a security as a matter of law. Defendant Barr also contends that the lease agreement was not a security, arguing that the agreement required the Winkler's active participation in the operation and management of the Energy Brain. Both defendants deny plaintiffs' allegations of fraud and assert that their transactions with the Winklers conformed to their representations in the promotional materials.

■ The court finds that the Energy Brain Equipment Leasing Program was an investment contract and a security under state law. RCW 21.20.005(12). The Washington State Supreme Court in *McClellan v. Sundholm,* 89 Wash.2d 527, 574 P.2d 371 (1978) held that the Washington State Securities Act incorporated the federal definition of an investment contract and its elements of proof.

> The federal definition of an investment contract was authoritatively stated in *SEC v. W.J. Howey Co.,* 328 U.S. 293 [66 S.Ct. 1100, 90 L.Ed. 1244] (1946). An investment contract within the meaning of the federal Securities Act is (1) an investment of money (2) in a common enterprise, (3) where the investor expects to reap profits from the efforts of the promoter or a third party.

*McClellan,* 89 Wash.2d at 531, 574 P.2d 371 (numbers added). As for the first element, neither defendant contests the Winkler's investment of money in the Energy Brain Program.

Both defendants dispute the second element, however, arguing that the Leasing Program was not a common enterprise among the Winklers, ALH, Saxon and Enersonics. Defendant Bell contends that the Program lacked horizontal commonality since the success of one investor's lease was independent from that of other investors.[2] However, both the Ninth Circuit and

---

**2.** In his memorandum in opposition to summary judgment, defendant Bell failed to submit

any specific facts which support his assertions that the Energy Brain Program was not a securi-

the Washington Supreme Court have established vertical commonality as the test for a common enterprise. *United States v. Jones,* 712 F.2d 1316, 1321 (9th Cir.1983) (funds of investors need not be pooled); *McClellan,* 89 Wash.2d at 532, 574 P.2d 371 (ongoing relationship between company offering silver and purchaser is test of commonality). Therefore, an alleged lack of horizontal commonality is irrelevant.

Defendants also assert that the Leasing Program did not create a direct relationship between the success of Enersonics, Saxon, and ALH on the one hand, and the success of the individual investor on the other. Thus, defendants contend that the Program lacked vertical commonality between promoter and investor. The court finds to the contrary. In a case with an identical scheme for leasing "Energy Control Systems", the District Court for the Eastern District of New York held that since the investors' fortunes were inextricably and directly tied to both the efforts and fortunes of the promoters, the leasing scheme satisfied the test for vertical commonality. *In re Energy Systems Equip. Leasing Sec. Litigation,* 642 F.Supp. 718, 736 (E.D.N.Y. 1986).

The same vertical commonality exists here. First, the success of the Winklers' investment was directly dependent ALH's ability to locate a profitable site for the Energy Brain and manage the unit efficiently. Second, since the Winklers' lease payments to Saxon after the first year were equal to 75% of the Winkers' net revenues from the system, Saxon remained a viable lessor only to the extent that the Winklers and its other lessees prospered. Third, Enersonics relied on Saxon to repay a 25–year promissory note for each Energy Brain. Thus, the entire Leasing Program survived only if Saxon located enough investors to generate profitable leases. Like their counterparts in the Eastern District of New York, the Winklers' fortunes were inextricably and directly tied to the efforts and fortunes of their promoters.

Defendants Barr and Bell also contest the third element to an investment contract: the expectation of profits from the efforts of third parties. Defendants assert that under the Energy Brain's lease, the Winklers had sole responsibility to market and operate the unit. Yet the Winklers had no experience in energy conservation, and like most of Saxon's investors, they relied on ALH to manage the unit in service. Given the economic realities facing the Winklers, the court finds that the Winklers had the responsibility in theory to operate the unit, but not in fact. Therefore, the court finds that the Winklers were passive investors, dependent on Saxon and ALH to derive a profit. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 848–849, 95 S.Ct. 2051, 2058–2059, 44 L.Ed.2d 621 (1975) (to decide whether investment is a security, "form should be disregarded for substance, and the emphasis should be on economic reality").

Plaintiffs' second argument—defendants did not register the Leasing Program in Washington as a security—is uncontested. Instead, defendant Barr offers an opinion letter written by a Seattle law firm which concludes that the program is not a security as a matter of state law. This opinion obviously does not bind the court, and the court is not aware of a good faith exception to the state registration statute. Therefore, the court finds that the Energy Brain was not registered under RCW 21.20.140 as required.

■ Finally, Plaintiffs allege that defendants Barr and Bell are both liable under RCW 21.20.430 for the failure to register. This statute creates civil liability for "any person, who offers or sells a security in violation of ... RCW 21.20.140." RCW 21.20.430(1). Defendant Bell concedes that he sold the Energy Brain Leasing Program, and the court finds him liable under RCW 21.20.430(1). Defendant Barr, though, asserts in his affidavit that he played no part in the affairs of Saxon, the corporation which offered and sold the Energy Brain leases, and therefore is not liable for the sale of an unregistered security.

ty. This alone warrants summary judgment.

The court, as discussed below, finds defendant Barr's actual involvement in the Leasing Program to be a genuine issue of material fact. The Washington Supreme Court recently held that a party is liable under RCW 21.20.430(1) if his actions were a substantial contributive factor in the sales transaction. *Haberman v. WPPSS,* 109 Wash.2d 107, 131, 744 P.2d 1032 (1987). Whether a defendant's conduct was a substantive contributing factor is also a question of fact. *Id.* at 132, 744 P.2d 1032. Therefore, the court denies summary judgment against defendant Barr for failure to register.

### C. SUMMARY JUDGMENT AGAINST DEFENDANTS BARR AND BELL

#### 1. *Defendant Bell*

Plaintiffs seek summary judgment against defendant Bell on various claims of fraud under RCW 21.20.010, 15 U.S.C. § 78j(b), 17 CFR § 240, Rule 10(b)(5), and 15 U.S.C. § 77*l*(2). Plaintiffs contend that Stephen Jeppson, an accountant, told Bell on November 29, 1982, that the Energy Brain Leasing Program may be fraudulent, but in spite of this warning, Bell continued to sell Energy Brain leases. In response, Bell claims that Jeppson's warnings were unreliable and Bell made diligent efforts to determine whether the Leasing Program was sound. Since defendant Bell's knowledge of any alleged improprieties and the circumstances surrounding Bell's conversations with Jeppson are genuine issues of material fact, the court finds summary judgment against defendant Bell inappropriate.

#### 2. *Defendant Barr*

Plaintiffs also seek summary judgment against Defendant Barr. Plaintiffs argue that defendant Barr's conviction in the State of New York for grand larceny in the second degree and scheme to defraud in the first degree estops Barr from contesting plaintiffs' allegations of fraud here. Defendant asserts in his affidavit that the issues decided in the criminal case were not identical to those in the present matter and argues that application of collateral estoppel would be inappropriate.

The court finds that plaintiffs have not proven that the issues presented to the jury in New York are identical to plaintiffs' claims, a necessary element of collateral estoppel. *Lange v. Heglund,* 391 F.Supp. 128 (W.D.Wash.1974). Plaintiffs have not given the court a copy of the indictment against Barr or any description of the charges against him. Thus, the court does not have the means to decide whether the jury convicted Barr of the same scheme to defraud as alleged by plaintiffs.

THEREFORE, the court rules as follows:

Plaintiffs' motion for partial summary judgment for failure to register securities is GRANTED as to defendant Bell and DENIED as to defendant Barr. Plaintiffs' motions for summary judgment against defendants Barr and Bell respectively are DENIED.

IT IS SO ORDERED.

### ON MOTIONS FOR FINAL JUDGMENT AND RECONSIDERATION.

THIS MATTER comes before the court on plaintiffs' motions for entry of final judgment under Fed.R.Civ.P. 54(b) against defendant Bell and for reconsideration of this court's order denying plaintiffs' motion for summary judgment against defendant Barr. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

### I. FACTS

On November 20, 1987, the court entered its Order Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment ("Summary Judgment Order") which states the underlying facts in this case. There, the court ruled that the Energy Brain Leasing Program was both an investment contract and a security for the purposes of the Washington State Securities Act. The court held further that defendant Bell, as a person who offered or sold the Energy Brain, failed to register

the security in violation of RCW 21.20.140, the state's registration statute.

In addition to their claims of unregistered securities, plaintiffs sought summary judgment against defendant Barr on various claims of fraud, contending that defendant Barr's conviction in the State of New York for grand larceny in the second degree and scheme to defraud in the first degree estops Barr from contesting plaintiffs' allegations here. The court held, however, that plaintiffs had failed to provide the court with the means to decide whether the jury convicted Barr of the same scheme to defraud as alleged by plaintiffs, and therefore, the court declined to apply collateral estoppel against defendant Barr.

Subsequently, plaintiffs filed with the court a copy of the criminal indictment against defendant Barr and now move for reconsideration of the court's denial of collateral estoppel. Plaintiffs also request entry of final judgment against defendant Bell.

## II. DISCUSSION

### A. ENTRY OF FINAL JUDGMENT AGAINST DEFENDANT BELL

In a case involving multiple parties, Rule 54(b) provides that the court may enter final judgment against one party "upon an express determination that there is no just reason for delay and upon express direction for entry of judgment." Fed.R.Civ.P. 54(b). The court has granted summary judgment against defendant Bell for his violation of RCW 21.20.140 and has also granted plaintiffs' motion to dismiss all remaining claims against defendant Bell. Since the court finds no just reason to delay the entry of final judgment, the court enters judgment against defendant Bell in the amount of eighty-eight thousand, one hundred and twelve dollars ($88,112.00), equal to the consideration paid for the security, together with interest at eight percent annum from the date of payment, plus costs of this action and reasonable attorneys fees.

### B. SUMMARY JUDGMENT AGAINST DEFENDANT BARR

Plaintiffs renew their arguments for collateral estoppel against defendant Barr on the grounds that the criminal indictment filed against him in the Supreme Court for the State of New York proves that the charges against Barr in the New York criminal case and in this matter are identical. Previously, this court had denied plaintiffs' motion for summary judgment, concluding that plaintiffs had failed to establish this identity of issues. In light of plaintiffs' additional evidence, the court shall reconsider its denial of summary judgment.

The New York jury convicted defendant Barr of scheme to defraud in the first degree.

> The defendants, in the county of New York and elsewhere, from on or about April 7, 1981, to on or about March 24, 1986, engaged in a scheme constituting a systematic ongoing course of conduct with intent to obtain property from 10 or more persons by false and fraudulent pretenses, representations, and promises, and so obtained property, a sum of money, from at least one such person, known to the grand jury.

Indictment No. 2753/86, count two at 17, Exhibit B to Plaintiffs' Motion for Reconsideration ("Barr Indictment"). Count two of the Barr Indictment lists four misrepresentations made or fraudulent actions taken by the criminal defendants, including defendant Barr, in furtherance of the scheme. First, defendants misrepresented the fair market value of the Energy Brain equipment by at least 80 times and falsely represented that the defendants' fair market value for the Energy Brain was supported by two independent appraisals by qualified experts in the energy field. Barr Indictment at 17–18.

Second, defendants misrepresented the tax savings available to investors in the program by calculating the projected tax savings of each lease as a percentage of the higher fraudulent value, falsely representing that the higher fradulent value was the fair market value. *Id.* at 18. Third,

defendants issued cash flow projections for the Energy Brain which were unrealistic and misleading. The defendants falsely represented to investors that by leasing an Energy Brain, the investor would be engaged in a business for profit. *Id.* at 19. Finally, fourth, defendants paid commissions of up to 40% of the advance lease payment as an incentive to induce financial planners, accountants and investment advisors located throughout the United States to market the Energy Brain nationwide. *Id.* at 19. Plaintiffs contend the jury's verdict convicting defendant Barr of scheme to defraud estops Barr from contesting his responsibility for these misrepresentations.

Defendant Barr opposes collateral estoppel, arguing that the circumstances, representations and reliance in each case were different from those here, and that the New York Supreme Court dismissed count seventy-five of the Barr Indictment which related to the Winklers. In response, plaintiffs note that the jury convicted defendant Barr of the same scheme to defraud involving leases of Energy Brains. Furthermore, plaintiffs claim that the Attorney General for the State of New York voluntarily dismissed several counts, including count seventy-five, of the Barr Indictment and thus the New York Supreme Court did not acquit defendant Barr of those charges.

The court finds the requisite identity of issues to justify the application of collateral estoppel. Under both state and federal law, the following conditions must be present:

(1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Mallard v. Retirement Sys.*, 103 Wash.2d 484, 489, 694 P.2d 16 (1985); *United States v. State of Washington*, 459 F.Supp. 1020, 1083 (W.D.Wash.1978) (federal standard).[1] Additionally, this court may, in its discretion, allow plaintiffs to estop defendant Barr from relitigating issues which defendant previously litigated and lost against another plaintiff, or in other words, allow the offensive use of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

Defendant's arguments do not persuade this court that collateral estoppel is inappropriate. First, defendant Barr's allegations of different circumstances, representations, and reliance do not alter the fact of his conviction, nor do they rebut plaintiffs' contention that the jury convicted defendant of intentionally defrauding investors in Energy Brains through false and fraudulent pretenses, representations, and promises. Defendant's sole evidence of different circumstances—his own affidavit— proves at best that the New York investors may have relied on the sales talk of their individual advisors. It does not in any way distinguish the jury's verdict against him and its relevance to the present case, namely that defendant Barr misrepresented (1) the fair market value of the Energy Brain, (2) tax savings available to investors, (3) the cash flow projections, and (4) the commissions paid to investment advisors.

Defendant's second argument is also meritless. The voluntary dismissal of count seventy-five of the Barr Indictment, grand larceny in the second degree, did not acquit defendant of those charges, nor did it affect or alter the jury's verdict on count

---

1. The language of the federal standard differs slightly from that of the state's.

    The issues to be concluded must be the same as that involved in the prior action; the issue must have been raised and litigated, and actually adjudged, in the prior action; the issue must have been material and relevant to the disposition of the prior action, and it must be shown that the use of the doctrine would not work injustice on any of the parties involved.

*United States v. State of Washington*, 459 F.Supp. at 1083.

    To the extent that the standards differ, the court finds that the four specific examples of misrepresentation listed in Count two of the Barr Indictment were raised, litigated and actually adjudged and furthermore, were material and relevant to the jury's verdict against defendant Barr.

two for scheme to defraud. Since plaintiffs seek collateral estoppel only on the four misrepresentations listed in count two, voluntary dismissal of count seventy-five is irrelevant. Therefore, the court shall preclude defendant Barr from relitigating the fact of these four misrepresentations.

Plaintiffs contend next that a ruling of estoppel eliminates any issues of material fact and thus warrants summary judgment on plaintiffs' claims against defendant Barr. The court finds summary judgment appropriate on plaintiffs' securities fraud claims and shall reconsider its denial of summary judgment. Plaintiffs allege first that defendant Barr employed a scheme to defraud in the offer or sale of Energy Brain leases, a violation of 15 U.S.C. § 77q(a)(1). Given defendant's conviction in New York State for scheme to defraud and this court's prior ruling that the Energy Brain Leasing Program was a security,[2] the sole issue before the court is whether defendant employed this scheme in the offer or sale of securities.

■ In its Summary Judgment Order, this court held that defendant Barr's actual involvement in the Leasing Program was a genuine issue of material fact. Summary Judgment Order at 900. The court's ruling of collateral estoppel alters this conclusion. To reach its verdict, the New York jury found defendant criminally liable for the same misrepresentations that appeared in the Energy Brain leasing materials. Since these leasing materials were the primary source of information for investors in Energy Brains, the court finds unrefuted evidence that defendant's actions were a substantive contributive factor in the offer and sale of Energy Brain leases. *See Anderson v. Aurotek*, 774 F.2d 927, 930 (9th Cir.1985); *Haberman v. WPPSS*, 109 Wash.2d 107, 127, 744 P.2d 1032 (1987). Therefore, defendant is liable for his violation of 15 U.S.C. § 77q(a)(1).

■ Second, plaintiffs claim that defendant Barr violated the provisions of Rule 10b–5, 15 CFR § 240.10b–5, by making material misrepresentations and omissions in relation to the Energy Brain Leasing Program. In response, defendant Barr contends that various disclaimers in the leasing materials warned plaintiffs that this was a high-risk investment with tax consequences which the Internal Revenue Service most likely would challenge. Defendant Barr does not, however, dispute that he represented the fair market value of the Energy Brain to be $480,000, or made the other representations contained in the leasing materials.

The court finds no genuine issues of material fact on plaintiffs' claims under Rule 10b–5. The disclaimers in the leasing materials may have been a defense to liability if the underlying representations in the materials were true, but this is not the case here. The New York jury convicted defendant of making various misrepresentations as to the value of the Energy Brain and a disclaimer in the leasing materials will not absolve him. Therefore, the court grants summary judgment on plaintiffs' claims under 10b–5.

The court also grants summary judgment on plaintiffs' securities fraud claims under state law. First, since this court held above that defendant's acts were a substantial contributive factor in the offer or sale of Energy Brain leases, the court grants summary judgment on plaintiffs' claims for failure to register securities. RCW 21.20.140; RCW 21.20.430(1); *Haberman*, 109 Wash.2d at 131, 744 P.2d 1032. Second, the Washington State Security Act's prohibition against misrepresentations and schemes to defraud, RCW 21.20.010, corresponds to the federal statutes with exceptions not relevant here. *Burgess v. Premier*, 727 F.2d 826 (9th Cir. 1984); *Kittilson v. Ford*, 93 Wash.2d 223, 608 P.2d 264 (1980) (scienter not required). Thus, summary judgment is warranted on plaintiffs' claims under RCW 21.20.010.

**2.** The court ruled that the Energy Brain Leasing Program was a security as a matter of state law. However, since the Washington Supreme Court incorporated the federal *Howey-Forman* standard into the Washington State Securities Act, this court finds the Leasing Program to be a security under federal law as well. *See* Summary Judgment Order at 898–899.

**904**

THEREFORE, plaintiffs' motion for entry of final judgment against defendant Bell is GRANTED. The court awards damages in the amount of eighty-eight thousand one hundred and twelve dollars ($88,112.00), plus costs of this action and attorneys fees. Plaintiffs' motion for reconsideration is GRANTED. Plaintiffs' motion for summary judgment against defendant Barr is GRANTED as to plaintiffs' claims under 15 U.S.C. § 77q(a)(1), 15 CFR § 240.10b–5, RCW 21.20.010, RCW 21.20.140, and RCW 21.20.430(1).

IT IS SO ORDERED.