95 P.3d 385 (2004)
STATE of Washington, Respondent,
v.
Stephen L. PEDERSEN, Appellant.
No. 52279-5-I.
Court of Appeals of Washington, Division 1.
August 2, 2004.
*386 Jennifer Dobson, Nielsen, Broman & Koch, Seattle, WA, for Appellant.
Scott A. Peterson, King Co. Pros. Att., Seattle, WA, for Respondent.

PUBLISHED IN PART
AGID, J.
Stephen Pedersen appeals his securities fraud conviction, arguing the instrument he issued was a commercial note rather than a security. He contends the trial court should have instructed the jury that a note that strongly resembles a note used in a commercial transaction is not a security. The trial court did not give this instruction, ruling that the issue was a matter of law rather than of fact. We hold that there was insufficient evidence to support giving the instruction and affirm.

FACTS
In 1994, Stephen Pedersen and his colleague formed a trust called the Secure Capital Short Term Asset Trust I. The purpose of the trust was "[t]o make collateral based investments and hold assets for the benefit of TRUST creditors and beneficiaries." Three Seattle residents ("the contributors") put approximately $160,000 into the trust between 1995 and 1997. In return, Pedersen issued trust certificates that promised an 18 percent annual return with a six month term. At the end of each six month period, Pedersen did not pay the contributors but instead issued rollover trust certificates. The trust was administratively dissolved in 1997, but Pedersen continued to issue rollover certificates through September 1999. The contributors later learned that Pedersen deposited their money into his personal account and spent the money on personal and business expenses. They also learned that the property Pedersen pledged as security was already pledged to other creditors.
While acting as co-trustee of the trust, Pedersen operated a business called Pacific Printing. In September 1997, Pedersen asked the contributors to "factor" Pacific *387 Printing's receipts.[1] Under this arrangement, the contributors would pool money into a U.S. Bank account from which Pedersen could withdraw funds. Pedersen would use the money to make short-term loans to his printing business, and the loans would be secured by Pacific Printing's accounts receivable. The loans were to be for no more than 90 percent of the accounts receivable pledged to the contributors, and the contributors were to receive 3 percent interest per month on the money Pederson withdrew. Pedersen was to deposit customers' payments on the accounts receivable into the account once they were received, and if the customer did not pay in 90 days, he was to deposit the interest owed to the contributors. If a customer did not pay in 180 days, he was to deposit the principal and interest to the contributors' account.
In October 1997, the contributors put $90,000 into a bank account and Pedersen provided them with a list of accounts receivable. In November 1997, the parties memorialized the factoring arrangement with a "Loan Agreement Between Pacific Printing and the Holders of the U.S. Bank Account." Between October and November, Pedersen withdrew all but $200 from the bank account and never made any deposits. In January 1998, Pedersen lost control of Pacific Printing. He did not inform the contributors of this, but instead assigned them a new list of accounts receivable.
The contributors later learned that Pedersen had already factored Pacific Printing's accounts receivable to another factor and had given other creditors security interests in the accounts receivable and Pacific Printing's equipment. The contributors asked Pedersen to return their money, but Pedersen was able to return only a small portion. In 1998, the contributors filed a civil action in King County Superior Court and obtained a default judgment against Pedersen. The State then charged Pedersen with eleven counts of securities fraud: counts one through eight involve the trust certificates from the Secure Capital Short Term Asset Trust I, and counts nine through eleven involve the loan agreement from the factoring arrangement. A jury convicted Pedersen of all counts, and the court sentenced him to 57 months of confinement. The court also ordered Pedersen to provide a biological sample for deoxyribonucleic acid (DNA) identification analysis. Pedersen appeals.

DISCUSSION

I. What Constitutes a "Security" and Reves v. Ernst & Young

The Securities Act of Washington, RCW 21.20, aims to "protect investors from speculative or fraudulent schemes of promoters,"[2] and courts are to construe the statute broadly to effectuate that purpose.[3] To convict Pederson of securities fraud, the State must prove that the instrument at issue is a security.[4] Washington law defines a security as:
any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment *388 contract; investment of money or other consideration in the risk capital of a venture with the expectation of some valuable benefit to the investor where the investor does not receive the right to exercise practical and actual control over the managerial decisions of the venture; voting-trust certificate; certificate of deposit for a security; fractional undivided interest in an oil, gas, or mineral lease or in payments out of production under a lease, right, or royalty; charitable gift annuity; any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities, including any interest therein or based on the value thereof; or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any security under this subsection.... [[5]]
Washington's definition mirrors the federal definition,[6] and thus we may look to federal law to determine the meaning of "security."[7] The definition "`embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'"[8] When determining whether a transaction is a security, courts must look at the substance of the transaction" `and the emphasis should be on economic reality.'"[9]
The main issue in this case is whether the trust certificates and loan agreement are securities. The State argued that the trust certificates were securities because trust certificates fall within the statutory definition of "security." It further argued that the loan agreement was an investment contract, which also falls within the statutory definition. Pedersen argued that the documents were not securities because they simply memorialized personal loans. Pedersen also wanted to argue that the documents were commercial loans made to correct cash flow problems, which are not securities under Reves v. Ernst & Young.[10] But the trial court refused to give a Reves instruction, and Pedersen argues this was an error.
In Reves, the United States Supreme Court clarified that not all notes are securities, despite the fact that the "security" definition begins with "any note[.]"[11] Instead, only notes used for investment purposes are securities.[12] To determine whether a note is used for investment purposes, courts begin with the presumption that every note is a security.[13] This presumption may be rebutted if the note bears a strong resemblance to one of the following: (1) a note delivered in consumer financing; (2) a note secured by a home mortgage; (3) a short-term noted secured by a lien on a small business or its assets; (4) a note evidencing a character loan to a bank customer; (5) short-term notes secured by an assignment of accounts receivable; (6) a note that formalizes an open-account debt incurred in the ordinary course of business; or (7) notes evidencing loans by commercial banks for current operations.[14] In other words, notes used in commercial transactions, rather than investments, are not securities.[15]
*389 To determine whether a note bears a strong resemblance to one of these instruments, courts consider four factors: (1) the motivations that would prompt reasonable parties to enter into the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether some factor, such as the existence of another regulatory scheme, significantly reduces the instrument's risk.[16] If an instrument is not strongly similar to one of the seven notes listed above, a court should examine it according to these four factors and, if appropriate, add it to the list.[17]
In this case, Pedersen argues that both the trust certificates and loan agreement are commercial loans and thus not securities under Reves.[18] But the trust certificates are clearly investment documents, as they reference on their face a trust that was registered with the Secretary of State and created for the purpose of making "collateral based investments [.]" Therefore, we will only address Pedersen's request for a Reves jury instruction as it relates to the loan agreement.
At trial, the State opposed Pedersen's instruction request. It argued that whether a note is a non-security under Reves is a question of law that should not be determined by a jury. The trial court agreed.[19] But to avoid the possibility that the jury would presume that any note was a security, as the definition states, the court removed the word "note" from the instruction defining a security. It instead instructed the jury: "`Security' means, among other things, any stock, bond, evidence of indebtedness, investment contract, or collateral trust certificate. A personal loan between private parties is not a security." The court further instructed the jury on the elements of an investment contract.
Pedersen argues that while the instructions permitted him to argue that the loan agreement was a personal loan, the absence of a Reves instruction precluded him from arguing that the agreement was a commercial note. But because a defendant is entitled to a jury instruction on his theory of the case only if sufficient evidence supports it,[20] we cannot decide whether Pedersen was entitled to a Reves instruction without first determining whether the available evidence would allow the jury to infer that the loan agreement was a non-security Reves note.[21]
Applying the Reves analysis, we first presume the loan agreement is a security.[22] Next we apply the four factors to determine whether the loan agreement strongly resembles one of the commercial notes listed in Reves. Pedersen argues that the document strongly resembles the fifth note listed in Reves: a short-term note secured by an assignment of accounts receivable. But the evidence as it relates to the four Reves factors does not support this argument.
First, we look to the parties' motivations in entering the transaction. "If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial *390 investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a `security.'"[23] But if the parties exchange the note to correct the seller's cash-flow problems, the note is less likely a security.[24] Here, the contributors' testimony indicated that they considered the arrangement an investment and intended to make a profit. One contributor, Pedersen's neighbor, testified that he thought the factoring arrangement was a "new type of investment." He also testified that he never loaned money personally to Pedersen. The other contributors referred to the arrangements as "investments," and no one testified that they intended to advance personal loans to Pedersen. They all understood that they were essentially purchasing accounts receivable for investment purposes and could expect a profit. On the other hand, Pedersen testified that the contributors were making him personal loans to help with Pacific Printing's cash flow problems. But the jury had to have rejected Pedersen's testimony because it convicted him even though the court instructed the jury that a personal loan is not a security. The factoring arrangement therefore appears to more closely resemble an investment in a business enterprise than a commercial or consumer transaction. It is doubtful that the jury would have found otherwise.
Second, we examine the document's plan of distribution "to determine whether it is an instrument in which there is `common trading for speculation or investment[.]'"[25] Here, there is no discernible plan of distribution, as the arrangement was limited to the three contributors. Nevertheless, "the reach of securities acts does not stop with the obvious or the common place. Certainly the investment agreement here would not be commonly traded for speculation or investment. It, nonetheless, contemplates a speculative venture."[26] Moreover, nothing in the loan agreement precluded the contributors from selling, assigning, or encumbering their interest.[27]
Third, we consider the reasonable expectations of the investing public. "[T]he fundamental essence of a `security' [is] its character as an `investment.'"[28] In this case, it was reasonable for the contributors to understand that this was an investment. None of the contributors testified that he or she was only helping Pedersen with his financial problems. And there is no evidence indicating that the investing public would not consider this a security.
Fourth, "we examine whether some factors such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Act unnecessary."[29] Here, Pedersen fails to point to any other regulatory scheme that would reduce the loan agreement's risk. While collateral may reduce risk,[30] the collateral here was unavailable as it had previously been assigned to other creditors and factors. Pedersen argues that the ability to collect damages in a civil lawsuit reduces the risk of the instrument. But not only is this speculative, but it also does not render the application of securities statutes unnecessary. If it did, there would be little need for securities acts. And finally, in Washington we have added a "policy consideration" to the Reves test: "The primary policy of the [Washington Securities Act] is `to protect investors.' And so we construe the Act liberally."[31]
*391 Because, under Reves' balancing test, the loan agreement does not strongly resemble a non-security short-term note secured by an assignment of accounts receivable[32] and because we see no reason to add the agreement to the list of non-security notes, we conclude that insufficient evidence exists for a jury to infer the loan agreement was a non-security Reves note. The trial court did not err by failing to provide a Reves instruction to the jury.[33] The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. See RCW 2.06.040; CAR 14.
KENNEDY and SCHINDLER, JJ., concur.
NOTES
[1] "Factoring" is the sale or assignment of a business' accounts receivable to another at a discounted price. In re Metro. Envtl., Inc., 293 B.R. 893, 895 (Bankr.N.D.Ohio 2003) (citing Capital City Fin. Group, Inc. v. Mac Constr. Inc., 48 UCC Rep. Serv.2d 1128, ¶ 2 n. 1, 2002 WL 2016332 (Ohio App. 5th Dist.2002); OHIO JUR.3d, Secured Transactions § 76). The buyer or assignee of the accounts receivable is called a "factor." Id. (citing Capital City Fin. Group, 2002 WL 2016332, 48 UCC Rep. Serv.2d at 1128, ¶ 2 n. 1). In return for selling or assigning the accounts receivable at a discounted price, the seller or assignor receives immediate access to cash. Id. (citing Capital City Fin. Group, 48 UCC Rep. Serv.2d at ¶ 2 n. 1, 2002 WL 2016332).
[2] Cellular Eng'g, Ltd. v. O'Neill, 118 Wash.2d 16, 23, 820 P.2d 941 (1991) (citing State v. Philips, 108 Wash.2d 627, 631, 741 P.2d 24 (1987); McClellan v. Sundholm, 89 Wash.2d 527, 533, 574 P.2d 371 (1978); Comment, Securities Fraud Under the Blue Sky of Washington, 53 WASH. L.REV. 279, 282 (1978)).
[3] Id. (citing McClellan, 89 Wash.2d at 533, 574 P.2d 371; Hoffer v. State, 113 Wash.2d 148, 152, 776 P.2d 963 (1989); Haberman v. WPSS, 109 Wash.2d 107, 126, 744 P.2d 1032, 750 P.2d 254 (1987), appeal dismissed, 488 U.S. 805, 109 S.Ct. 35, 102 L.Ed.2d 15 (1988)).
[4] RCW 21.20.010.
[5] RCW 21.20.005(12)(a) (emphasis added).
[6] Cellular Eng'g, 118 Wash.2d at 24, 820 P.2d 941 (citing 15 U.S.C. §§ 77b, 78c (1988); Philips, 108 Wash.2d at 630, 741 P.2d 24).
[7] Id. (citing Philips, 108 Wash.2d at 630, 741 P.2d 24).
[8] Id. (quoting Sec. and Exch. Comm'n v. W.J. Howey Co., 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)).
[9] Id. at 24-25 (quoting Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967)).
[10] 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990).
[11] Id. at 62-63, 110 S.Ct. 945.
[12] Id. at 62, 110 S.Ct. 945.
[13] Id. at 65, 67, 110 S.Ct. 945.
[14] Id. at 65, 110 S.Ct. 945.
[15] State v. Argo, 81 Wash.App. 552, 563, 915 P.2d 1103 (1996) (citing Reves, 494 U.S. at 65, 110 S.Ct. 945).
[16] Reves, 494 U.S. at 66-67, 110 S.Ct. 945.
[17] Id. at 67, 110 S.Ct. 945.
[18] In his appellate brief, Pedersen argues that only the loan agreement constitutes a Reves note. But in his Statement of Additional Grounds for Review, Pedersen argues that he was entitled to a Reves instruction on all counts, including the counts involving the trust certificates.
[19] During oral argument in this court, the State appeared to change course and agree with Pedersen that the Reves issue is a question of fact. See Douglass v. Stanger, 101 Wash.App. 243, 246, 2 P.3d 998 (2000) (whether an instrument is a security is a question of fact). We do not reach this issue because we hold the evidence did not support giving the instruction. This is the State's other argument for affirming the trial court.
[20] State v. Williams, 132 Wash.2d 248, 259-60, 937 P.2d 1052 (1997) (citing State v. Hughes, 106 Wash.2d 176, 191, 721 P.2d 902 (1986)).
[21] See State v. Vinson, 74 Wash.App. 32, 37, 871 P.2d 1120 (quoting State v. Yates, 64 Wash.App. 345, 351, 824 P.2d 519, review denied, 119 Wash.2d 1017, 833 P.2d 1390 (1992)), review denied, 125 Wash.2d 1002, 886 P.2d 1134 (1994) ("Evidence to support an instruction is sufficient where `the jury could reasonably infer the existence of the facts needed to use it.'").
[22] In order to reach the Reves analysis in the first place, we must assume that the loan agreement is a note. We make this assumption here.
[23] Reves, 494 U.S. at 66, 110 S.Ct. 945.
[24] Id.
[25] Id. (quoting Sec. and Exch. Comm'n v. C.M. Joiner Leasing Corp., 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943)).
[26] Douglass, 101 Wash.App. at 253, 2 P.3d 998 (citation omitted).
[27] Id.
[28] Reves, 494 U.S. at 68-69, 110 S.Ct. 945.
[29] Id. at 67, 110 S.Ct. 945 (citing Marine Bank v. Weaver, 455 U.S. 551, 557-59, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982)).
[30] Id. at 69, 110 S.Ct. 945.
[31] Douglass, 101 Wash.App. at 254, 2 P.3d 998 (citing Ito Int'l Corp. v. Prescott, Inc., 83 Wash.App. 282, 292, 921 P.2d 566 (1996)).
[32] The loan agreement also fails to strongly resemble a short-term note secured by an assignment of accounts receivable because it is not short-term. It specifically states that the agreement lasts "for the period beginning October 24, 1997 and ending on or before December 31, 1998."
[33] The State argues that a Reves instruction was not necessary because the loan agreement was not a note but rather an investment contract. And because the trial court instructed the jury specifically on the elements of investment contracts, the jury presumably chose to convict on that ground. But the trial court included the phrase "among other things" in the instruction defining security, so it is possible the jury concluded that the document was not an investment contract but was a security because it fell within the "among other things" category. Pedersen thus argues that a Reves instruction was particularly important because it cured the flaw of the overly broad instruction. We agree that the definition could have confused the jury, but because insufficient evidence supported a Reves instruction, there was no error.