[No. 3730–II.   Division Two.   August 4, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. VAL
WAYNE HUBBARD, *Appellant*.

*Kathryn Guykema,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, C.J.—Defendant Val Wayne Hubbard appeals his conviction for delivery of a controlled substance by assigning error to the trial court's limitation of impeachment

examination and admission of evidence of other crimes not charged or proven. We reverse.

Defendant's version of the facts, if believed, portrays an unsavory picture of police entrapment. An acquaintance of defendant, James Glace had, in the past, allegedly borrowed $50 from defendant for unknown reasons. Unbeknownst to defendant, Glace was a police informant working with the narcotics division of the local police department. Glace would arrange drug purchases between dealers and undercover police, earning a commission in the event of a drug buy or arrest.

In the morning of February 7, 1978, Glace met with defendant to discuss repayment of the $50 loan. Although Glace apparently had no cash on hand, he did have a small packet of white powder which he insisted defendant take as collateral.[1] Although reluctant, defendant accepted the packet and the two parted company. Later that afternoon, Glace again contacted defendant and asked him to come to a parking lot in a Puyallup shopping center where the alleged loan would be repaid. At the meeting Glace introduced defendant to an undercover agent posing as a buyer. The buyer requested to "see the dope" and defendant volunteered the small packet of white substance. The buyer examined the packet and then handed defendant $40. Glace assured defendant that he (Glace) still owed defendant $10. The parties left the scene and defendant was arrested some months later.

At defendant's trial, defendant called Glace as an adverse witness and sought to establish a defense of entrapment. Testimony indicated that Glace himself was a drug user of many years and that he had an interest in setting up defendant solely for the commission he would receive. Upon direct examination defendant sought to expose the details of Glace's habit including the type of drugs used and the

---

[1]At trial, defendant admitted he suspected that the small packet contained illegal drugs.

daily cost of his habit. Following the prosecution's objection, however, the trial court would not allow defendant to explore this area beyond establishing the existence of Glace's drug habit and the receipt of a commission for successful drug buys. The trial court rather abruptly refused to permit defense counsel to make an offer of proof. Defendant assigns error to the rulings, arguing that he was not allowed to fully establish Glace's motives to set up defendant and thereby bolster his defense of entrapment.

In *State v. Smith,* 93 Wn.2d 329, 350, 610 P.2d 869 (1980), our State Supreme Court recently indicated that in proving the defense of entrapment

> police conduct [is] secondary *unless* the conduct serves to entrap an unwary defendant into committing a crime he had no intention of committing. *United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973); State v. Gray, 69 Wn.2d 432, 418 P.2d 725 (1966); *State v. Emerson,* 10 Wn. App. 235, 517 P.2d 245 (1973).

*See* RCW 9A.16.070(1)(b). At trial defendant staunchly maintained that he never intended to make a drug sale and that his only concern was repayment of the $50 he had loaned to Glace. Recognizing that this is not a case alleging entrapment as a matter of law, as urged in *Hampton v. United States,* 425 U.S. 484, 48 L. Ed. 2d 113, 96 S. Ct. 1646 (1976), or *United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637 (1973), we find it was error to preclude defendant from exploring the extent of Glace's drug involvement in establishing his defense of entrapment.

Beyond defendant's denial of a predisposition to commit the crime, it was critical to his defense that defendant cast doubt upon Glace's version of the facts. A costly and extensive drug habit could show not only Glace's motives and potential bias against defendant, but also Glace's access to the type of drugs allegedly sold and whether Glace was affected by the habit at the time of these occurrences. To foreclose this avenue of attack was to unreasonably hamper defendant in marshaling his defense. Because defendant's testimony suggested he was not predisposed to

commit the crime, he must be allowed to establish the extent of official inducement and the veracity of the witnesses testifying thereto.

Defendant next assigns error to the trial court's admission of evidence regarding an alleged drug sale by defendant. Upon cross–examination by the prosecution, Glace testified that he had purchased drugs from defendant 6 years earlier. Defendant challenges the admissibility of this alleged sale.

█ It is well settled that evidence of unrelated crimes may not be admitted, except where such evidence shows motive, intent, absence of accident or mistake, a common scheme or plan, identity, or is somehow relevant and necessary to prove an essential ingredient of the crime charged. *State v. Mack,* 80 Wn.2d 19, 490 P.2d 1303 (1971). Evidence of prior unlawful acts, similar to the one with which defendant is charged, is admissible to rebut defendant's denial of a predisposition to commit the crime.

> [I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue.

*Sorrells v. United States,* 287 U.S. 435, 451, 77 L. Ed. 413, 53 S. Ct. 210, 86 A.L.R. 249 (1932); *see also* Annot., 61 A.L.R.3d 293 (1975). Evidence of defendant's prior drug sales, therefore, is relevant to rebutting defendant's denial of intent to sell a controlled substance. Questions of remoteness are matters for the sound discretion of the trial judge. *State v. Gray,* 64 Wn.2d 979, 395 P.2d 490 (1964).

We reverse and remand.

PETRIE, J., and JOHNSON, J. Pro Tem., concur.