[No. 28985-3-I.    Division One.    April 6, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH RICHARD GUY DANIS, *Appellant*.

*Russell K. Jones,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brenda Bannon, Deputy,* for respondent.

FORREST, J. — Joseph Richard Guy Danis appeals his sentence for vehicular homicide and vehicular assault, contending that the Sentencing Reform Act of 1981 (SRA) unconstitutionally treats perpetrators of vehicular assault or vehicular homicide differently depending on whether or not multiple victims are in one car. He also challenges the restitution order. We affirm.

On the morning of January 10, 1991, Danis fell asleep at the wheel of his pickup truck while driving under the influence of alcohol. The truck drove off the road and collided with a utility pole. Two men were working around the pole. One of the men, Edwin Nix, was working on a ladder and was knocked off when Danis's truck collided with the pole. Nix suffered a broken arm, broken ribs, a fractured pelvis and several shoulder injuries. The other man, Carl Pruitt, was standing near the base of the utility pole and died of his injuries.

Danis pleaded guilty to one count of vehicular homicide and one count of vehicular assault. He was sentenced to 38 months for vehicular homicide and 14 months for vehicular assault, the sentences to run concurrently. Danis was also ordered to pay approximately $29,000 in restitution.

## STANDING

RCW 9.94A.400(1)(a)[1] provides, in part, that for purposes of calculating an offender score in sentencing, current

---

[1] "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time

offenses which "encompass the same criminal conduct" will be counted as one offense. In order to be considered the same criminal conduct, two crimes must involve the same victim, with one exception: cases of vehicular assault or vehicular homicide where multiple victims occupied the same vehicle. Danis challenges this exception on equal protection grounds.

■ The State urges that Danis has no standing to challenge RCW 9.94A.400(1)(a). It argues that Danis cannot complain that some other driver whose victims were in one vehicle would receive a lesser sentence. We disagree. If Danis cannot complain of this classification, who can? It is unlikely that a defendant who injures two people in one car would complain that he is treated too leniently. The State fails to recognize that Danis's argument is that there is only one valid class of those who injure or kill multiple victims by operating an automobile. Although he does not expressly state the relief that he wishes on resentencing, by implication he urges that he should be treated the same, and thus receive equal protection of the laws, as a driver whose victims occupy one vehicle. We find that Danis has standing.

### EQUAL PROTECTION

Danis argues that RCW 9.94A.400(1)(a) violates equal protection by mandating a higher offender score for him than for a defendant who injured the same number of victims but whose victims occupied the same vehicle. He argues that since his right to physical liberty is involved, the statute should be subject to strict scrutiny.

■ In constitutional analysis, strict scrutiny is applied to statutory classifications which involve a suspect class or a fundamental right.[2] No suspect class is involved here. Danis

---

and place, and involve the same victim. This definition does not apply in cases involving vehicular assault or vehicular homicide if the victims occupied the same vehicle. However, the sentencing judge may consider multiple victims in such instances as an aggravating circumstance . . .".

[2]*State v. Smith*, 93 Wn.2d 329, 336, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980).

seeks to rely on *State v. Rice*[3] which held that the right to physical liberty is a fundamental right which requires strict scrutiny.[4] However, a year after *Rice* the Supreme Court retreated from that position in *State v. Phelan*,[5] where the court faced the question of whether pretrial detention must be credited against the discretionary minimum term set by the Board of Prison Terms and Paroles.[6] After specifically noting *Rice*, the court rejected strict scrutiny, holding that because the classification at issue involved the right to physical liberty of " 'a discrete class . . . not accountable for their . . . status' ", the poor, an intermediate level of scrutiny was applicable. *Phelan*, at 514 (quoting *Plyler v. Doe*, 457 U.S. 202, 223, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982)). The Supreme Court reiterated this rule in *In re Mota*,[7] which involved good-time credit for time spent in county jail prior to sentencing.[8] The court there stated, "the denial of a liberty interest due to a classification based on wealth is subject to intermediate scrutiny." *Mota*, 114 Wn.2d at 474. *Phelan* and *Mota* set forth a clear rule that intermediate scrutiny is applicable to statutory classifications which involve deprivation of liberty *and* what we would term a "semi-suspect" class, such as the poor.[9] By retreating from

---

[3]98 Wn.2d 384, 655 P.2d 1145 (1982).

[4]*Rice*, at 400.

[5]100 Wn.2d 508, 671 P.2d 1212 (1983).

[6]*Phelan*, at 509.

[7]114 Wn.2d 465, 788 P.2d 538 (1990).

[8]*Mota*, at 467.

[9]*See also In re Knapp*, 102 Wn.2d 466, 687 P.2d 1145 (1984). *Knapp* involved credit for time served in a mental hospital pursuant to a criminal conviction. While the *Knapp* court cited the *Phelan* standard, and held that the policy violated equal protection, it is not at all clear what standard was used. *Knapp*, at 471-76. Moreover, the mentally ill could easily be considered a semisuspect class consistent with *Phelan*.

*Rice*, the Supreme Court has clearly indicated that a liberty interest alone does not require strict scrutiny.

Recently, the Court of Appeals, Division Three, has applied intermediate scrutiny in cases involving denial of physical liberty with no semisuspect class. Both *State v. Lua*[10] and *State v. Coria*[11] involved enhanced punishment for drug sales near schools or school bus stops and used intermediate scrutiny based on a liberty interest alone.[12] Three cases are cited in support of this holding: *State v. Phelan, supra, In re Knapp*,[13] and *State v. Ham*.[14]

In our view, the holdings in *Lua* and *Coria* are not warranted by the authority cited. In disavowing the strict scrutiny test of *Rice*, the Supreme Court in *Phelan* succinctly stated the reason for applying an intermediate level of scrutiny:

> Physical liberty, while not recognized as "fundamental", is a basic human right and the poor, while not a suspect class, cannot be said to be fully accountable for their status. Since a denial of credit for presentence jail time involves both a deprivation of liberty in addition to that which would otherwise exist, and a classification based solely on wealth, we will apply an intermediate level of scrutiny in the present case.

*Phelan*, 100 Wn.2d at 514. That this is the central holding of *Phelan* is confirmed by the following statement in *In re Knapp*, 102 Wn.2d at 471:

> *Phelan* II, noting the recent Supreme Court decision in *Plyler v. Doe*, . . . involved both a deprivation of liberty in addition to that which would otherwise exist, and a classification based solely on wealth. Therefore, the court applied an intermediate level of scrutiny . . .[.]

---

[10] 62 Wn. App. 34, 813 P.2d 588, *review denied*, 117 Wn.2d 1025 (1991).

[11] 62 Wn. App. 44, 813 P.2d 584, *review granted*, 117 Wn.2d 1022 (1991) [Reporter's Note: *Reversed* at 120 Wn.2d 156, 839 P.2d 890 (1992).].

[12] *Lua*, at 41; *Coria*, at 50.

[13] 102 Wn.2d 466, 687 P.2d 1145 (1984).

[14] 39 Wn. App. 7, 691 P.2d 239 (1984) (relying on *State v. Cook*, 37 Wn. App. 269, 679 P.2d 413 (1984)).

*State v. Ham*, 39 Wn. App. at 9, at best applied intermediate scrutiny halfheartedly in upholding a statute prohibiting participation in cockfighting, stating, "[t]hus, *arguably* an intermediate level of scrutiny applies here." (Italics ours.)

■ The Supreme Court's delineation of the areas to which intermediate scrutiny applies controls appellate court decisions to the contrary. We note that a number of recent Washington cases have rejected the intermediate scrutiny test when liberty interests alone are at stake.[15] We respectfully decline to follow *Lua* and *Coria*.[16] We hold that minimal scrutiny, not intermediate scrutiny, is applicable to Danis's equal protection claim.

■ The Legislature has extremely broad, almost plenary authority to define crimes and prescribe punishments, subject only to constitutional limitations.[17] A party asserting that a statutory classification violates equal protection under minimal scrutiny bears a heavy burden.

> A legislative enactment is presumed constitutional and the party challenging it bears the burden of proving it unconstitutional beyond a reasonable doubt. . . . Moreover, if a court can reasonably conceive of a state of facts to exist which would justify the legislation, those facts will be presumed to exist and the statute will be presumed to have been passed with reference to those facts.

*State v. Brayman*, 110 Wn.2d 183, 193, 751 P.2d 294 (1988).

■ We note that our Supreme Court has at different times set forth different formulations of the rational relation test which is to be applied under minimal scrutiny. In

---

[15]*See State v. Smith*, 117 Wn.2d 263, 277-79, 814 P.2d 652 (1991); *In re Whitesel*, 111 Wn.2d 621, 634, 763 P.2d 199 (1988); *In re Mayner*, 107 Wn.2d 512, 517-19, 730 P.2d 1321 (1986).

[16]The logical application of the *Lua/Coria* holding would have a far-reaching impact on the criminal law by making the SRA sentencing matrix and the degrees of many crimes subject to intermediate scrutiny. This seems an unwarranted encroachment on legislative authority.

[17]*See State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930, 93 L. Ed. 2d 351, 107 S. Ct. 398 (1986).

*Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*[18] the court enunciated a 3-part inquiry: (1) does the classification apply alike to all members within the designated class? (2) are there reasonable grounds to support the classification's distinction between those within and without the class? and (3) does the classification have a rational relation to the purpose of the statute?[19] Recently, in *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799 P.2d 235 (1990) the court stated the test more simply:

> A legislative classification will be upheld . . . unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.

The *Yakima* formulation does not appear a helpful guide to analysis, and indeed, it appears to unnecessarily segregate the inquiry. The first prong as to applying alike to members of the class seems always to be answered in the affirmative; the question always is whether the class is a legitimate one. Nor is it clear how to determine whether reasonable grounds exist to support the distinction under the second prong without referring to the purposes of the statute. For example, reasonable grounds may exist to distinguish those who are mentally retarded for purposes of licensing, but not for purposes of zoning.[20] We believe that *Omega* presents the better formulation, but the statute satisfies either analysis.

█ The classification presented here includes those guilty of multiple counts of vehicular assault or vehicular homicide whose victims did not occupy the same vehicle as distinguished from those whose victims did occupy the same vehicle. A basis for this distinction is that victims in the same vehicle are necessarily hurt by one impact, whereas multiple victims not in the same vehicle (for example, two vehicles or

---

[18]92 Wn.2d 831, 601 P.2d 936 (1979).

[19]*Yakima*, at 835-36.

[20]*See Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985).

two pedestrians or one vehicle and one pedestrian) almost necessarily involve more than one impact. As applied to Danis, there is an appreciable gap in time and space between his injury to the two victims. Moreover, the classification represents an intuitive feeling that one is less culpable in hitting one car, even though two victims are in the car, than in hitting two cars or a car and a pedestrian or two pedestrians, particularly since pedestrians are considered more vulnerable than occupants of a vehicle. The Legislature is entitled to recognize that feeling. Prescribing penalties for all crimes is in part the exercise of moral judgment as to culpability. The classification is rationally related to the legitimate purpose of the SRA, to insure that punishment is proportionate to the seriousness of the offense. This reasoning is neither arbitrary nor capricious. The Legislature is entitled to provide less punishment to defendants whose victims occupied one vehicle.

## RESTITUTION

■ Danis contends the trial court erred in including lost overtime in the restitution order. In Danis's sentencing brief before the Superior Court there is no objection to the restitution amount nor was there any objection made at sentencing. Issues not raised below will not be considered on appeal.[21] In *State v. Sly*, 58 Wn. App. 740, 749, 794 P.2d 1316 (1990), the defendant appealed the trial court's finding of several bases for an exceptional sentence.[22] The appellate court refused to review the issue as to one of the bases, stating that the "absence of an objection in the court below deprived the trial court of the opportunity to make a proper record to sustain its observation." The same concern is present in the case at bar; with no objection the court had no reason to spell out the basis of the order.[23] In any event,

---

[21]*See State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986).

[22]*Sly*, at 747.

[23]No record of the sentencing proceedings was designated for this court's record.

the record strongly suggests that the overtime was easily ascertainable.

Affirmed.

WEBSTER, A.C.J., and SCHOLFIELD, J., concur.

Review denied at 119 Wn.2d 1015 (1992).