[Nos. 28001-5-I; 28368-5-I.   Division One.   August 17, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. TYRONE DOBBINS, *Defendant,* TYROE EDWARD HILL, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CLARK ELMO ROSS, *Appellant.*

*Lorraine Lee* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *James Whisman* and *Michael Shaw, Deputies,* for respondent.

COLEMAN, J. — On May 14, 1992, this court consolidated the appeals of Tyroe E. Hill and Clark E. Ross. Hill and Ross appeal sentences for one count of violation of the Uniform Controlled Substances Act, contending that the portion of the act providing for sentence enhancement for delivery of a controlled substance within 1,000 feet of a school violates the due process and equal protection clauses of the state and federal constitutions. We affirm.

## I
### FACTS

A. <u>State v. Hill</u>. On the evening of Saturday, October 13, 1990, Officer Joseph Elliott was working a buy/bust opera-

tion and driving an unmarked car. In the 4900 block of Rainier Avenue South, Officer Elliott made eye contact with Tyroe Hill, who approached the passenger side of Elliott's vehicle and asked if he was "looking". When Elliott replied "Yes", Hill entered Elliott's car and gave directions. After driving around the block, Officer Elliott parked the car, which Elliott and Hill exited. Using a $20 bill provided by Elliott, Hill contacted the dealer and performed some sort of transaction. When Hill returned to Officer Elliott, he stated, "I have got what you want, let's get back in the car." Hill handed Officer Elliott the rock cocaine inside the car as they were driving toward Ferdinand and 37th, and shortly thereafter Hill got out of the car.

Hill was subsequently arrested. The dealer, a Tyrone Dobbins, was also arrested, and the $20 bill that Officer Elliott had given to Hill was found in Dobbins' possession. The substance that Hill bought for Officer Elliott weighed .014 grams and tested positive for cocaine.

Hill was charged with one count of delivering cocaine in violation of RCW 69.50.401(a), the Uniform Controlled Substances Act. The information also charged that the offense was committed within 1,000 feet of the Columbia Elementary School grounds. At trial, the evidence showed that the locations where Officer Elliott first made contact with Hill (Hudson and Rainier) and where Officer Elliott received the cocaine (Ferdinand and 37th) were respectively 560 feet and 360 feet from the school yard.

The jury found Hill guilty of violating the Uniform Controlled Substances Act and found that the offense was committed in a school zone. At the sentencing hearing held on March 8, 1991, the court imposed a 45-month term of confinement, which included sentence enhancement as provided by RCW 69.50.435, the "school zone" statute. Hill appeals.

B. State v. Ross. Between 11 p.m. and midnight on February 1, 1991, Officers Carrie Stiner and Clifton Paige drove their unmarked car into the China Express parking lot at

20th South and South Jackson Street. Officer Stiner got out of the car, made contact with Clark Ross, and told him she was looking for a "20", the street term for a quantity of rock cocaine. Ross entered the restaurant, returned to Officer Stiner approximately 30 seconds later, and stated that "he had the rock." Beside Officer Stiner's car, Ross exchanged the "rock" for a $20 bill.

Subsequently, Ross was arrested, and the substance that Ross sold to Officer Stiner tested positive for cocaine. Ross was charged with one count of delivering cocaine in violation of RCW 69.50.401(a). The information also charged that the offense was committed within 1,000 feet of the Washington Middle School grounds.

Following a bench trial, the court found Ross guilty of violating the Uniform Controlled Substances Act and found that the offense was committed in a school zone. At the sentencing hearing held on May 3, 1991, the court imposed a 64-month term of confinement, which included sentence enhancement for the school zone violation. Ross appeals.

## II
### DUE PROCESS

We initially consider whether RCW 69.50.435(a)[1] violates due process by creating an irrebuttable presumption that delivery of a controlled substance within 1,000 feet of school grounds detrimentally affects children, whether or not they are present. RCW 69.50.435(a) provides that "[a]ny person

---

[1]Former RCW 69.50.435(a) provides:

"Any person who violates RCW 69.50.401(a) by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance listed under that subsection to a person in a school or on a school bus or within one thousand feet of a school bus route stop designated by the school district or within one thousand feet of the perimeter of the school grounds is punishable by a fine of up to twice the fine otherwise authorized by this chapter, but not including twice the fine authorized by RCW 69.50.406, or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter, but not including twice the imprisonment authorized by RCW 69.50.406, or by both such fine and imprisonment."

who violates RCW 69.50.401(a)[2] by . . . delivering . . . a controlled substance . . . to a person . . . within one thousand feet . . . of the perimeter of the school grounds" is subject to enhanced punishment. The penalty is enhanced by adding 24 months to the presumptive sentence. RCW 9.94A.310(5).[3] A defendant may avoid penalty enhancement by showing that delivery of a controlled substance took place within a private residence, that the delivery was not for profit, and that no person under 18 years of age was present. RCW 69.50.435(d).[4] However, a defendant may not avoid penalty enhancement by showing that no children were in school or that school was not in session. RCW 69.50.435(c).[5]

Hill and Ross contend that RCW 69.50.435(a) violates the due process clause by creating an irrebuttable presumption that delivery of a controlled substance within 1,000 feet of a school detrimentally affects the children attending that school and justifies enhanced punishment. The appellants support their contention by citing to *Cleveland Bd. of Educ.*

---

[2]RCW 69.50.401(a) provides in part that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

[3]RCW 9.94A.310(5) provides:
"An additional twenty-four months shall be added to the presumptive sentence for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435."

[4]RCW 69.50.435(d) provides in relevant part: "It is an affirmative defense to a prosecution for a violation of this section that the prohibited conduct took place entirely within a private residence, that no person under eighteen years of age or younger was present in such private residence at any time during the commission of the offense, and that the prohibited conduct did not involve delivering, manufacturing, selling, or possessing with the intent to manufacture, sell, or deliver any controlled substance in RCW 69.50.401(a) for profit."

[5]RCW 69.50.435(c) provides:
"It is not a defense to a prosecution for a violation of this section or any other prosecution under this chapter that persons under the age of eighteen were not present in the school . . . at the time of the offense or that school was not in session."

*v. LaFleur*, 414 U.S. 632, 647-48, 39 L. Ed. 2d 52, 94 S. Ct. 791 (1974) (impermissible presumption that pregnant woman is physically incapable of work past the fifth month), *Stanley v. Illinois*, 405 U.S. 645, 654-58, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972) (improper to presume that unmarried fathers are unsuitable parents) and *Seattle v. Ross*, 54 Wn.2d 655, 660-62, 344 P.2d 216 (1959) (impermissible presumption that anyone found in proximity to unlawfully kept narcotic drugs was guilty of participating in drug trafficking). However, the appellants' contention ignores federal cases upholding a comparable federal school zone statute,[6] in which cases similar to those cited by Ross and Hill were distinguished.

In *United States v. Holland*, 810 F.2d 1215 (D.C. Cir.), *cert. denied*, 481 U.S. 1057 (1987), the defendant argued that the federal school zone statute established an "irrebuttable and irrational presumption" that a drug dealer operating near a school deserves substantially greater punishment. *Holland*, at 1220. To support his argument, Holland noted *Leary v. United States*, 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532 (1969) and *Tot v. United States*, 319 U.S. 463, 87 L. Ed. 1519, 63 S. Ct. 1241 (1943), two cases in which a statutory presumption was held to violate due process. *See Holland*, at 1220. However, the court distinguished the presumptions in *Leary* and *Tot*, which "allowed the trier of fact to predicate *guilt* on a set of facts presumed from another set of facts proved", *Holland*, at 1220, from the congressional determination that school zone-based drug

---

[6]The United States Congress enacted a school zone statute in October 1984. As amended, the statute provides in relevant part: "Any person who violates section 841(a)(1) . . . or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility, is (except as provided in subsection (b) of this section) subject to (1) twice the maximum punishment authorized by section 841(b) of this title; and (2) at least twice any term of supervised release authorized by section 841(b) of this title for a first offense." 21 U.S.C. § 860(a), formerly codified at 21 U.S.C. § 845(a).

transactions deserved greater sanctions as a matter of law. *Holland*, at 1221. Because the federal school zone statute did not contain the " 'fact upon fact' type of presumption such as those found in *Tot* and *Leary*" and "[did] not involve conclusive determinations that may be contrary to verifiable fact" as in *Cleveland Bd. of Educ. v. LaFleur, supra*, the presumption of enhanced punishment for school zone transactions was permissible. *Holland*, at 1222.

Similarly, in *United States v. Agilar*, 779 F.2d 123 (2d Cir. 1985), *cert. denied*, 475 U.S. 1068 (1986), the defendant claimed that the federal school zone statute violated the due process clause "by creating an unwarranted irrebuttable presumption that every sale of narcotics within 1,000 feet of a school has . . . detrimental effects upon school children[.]" *Agilar*, at 125. The federal court for the Second Circuit disagreed. The court held that enhanced punishment for those who sell drugs near schools was a rational means of reducing "the risk that drugs would be readily available to school children." *Agilar*, at 125.

■ In light of these federal cases, we conclude that the enactment of RCW 69.50.435(a) does not violate due process. The statute is rationally related to restricting drug access to school children, and the legislative presumption that school zone drug trafficking detrimentally affects school children and justifies enhanced punishment is not the "fact upon fact" type of presumption which traditionally has been held to violate the due process clause of the constitution.

## III
### EQUAL PROTECTION

Finally, we consider whether RCW 69.50.435(d), the affirmative defense portion of the school zone statute, violates the appellants' right to equal protection of the law. The appellants contend that RCW 69.50.435(d) violates their right to equal protection because it provides an affirmative defense to sentence enhancement for a group to which they are similarly situated but not for them. RCW 69.50.435(d) provides an exception to sentence enhancement for drug deliveries within 1,000 feet of a school yard, if delivery

occurs in a private home, is not for profit, and children are not present. However, the statute does not provide an affirmative defense for drug deliveries within 1,000 feet of a school yard where children are not present and delivery occurs in or near a vehicle, as here.

■ "Equal protection of the laws under state and federal constitutions requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978). When a physical liberty interest is at issue, there is a split between the divisions as to whether Washington courts should apply the intermediate scrutiny test or the rational basis test to analyze an equal protection challenge.[7] We adopt the reasoning of the case decided in Division One, *State v. Danis*, 64 Wn. App. 814, 826 P.2d 1096, *review denied*, 119 Wn.2d 1015 (1992), and apply the rational basis test to the appellants' equal protection challenges.

As noted in *Danis*, "our Supreme Court has at different times set forth different formulations of the rational relation test which is to be applied under minimal scrutiny."[8] *Danis*, at 820. Using either of the minimal scrutiny tests

---

[7]*Compare State v. Coria*, 62 Wn. App. 44, 50, 813 P.2d 584, *review granted*, 117 Wn.2d 1022 (1991) *and State v. Lua*, 62 Wn. App. 34, 41, 813 P.2d 588 (Division Three, intermediate scrutiny), *review denied*, 117 Wn.2d 1025 (1991) *with State v. Danis*, 64 Wn. App. 814, 820, 826 P.2d 1096 (Division One, minimal scrutiny), *review denied*, 119 Wn.2d 1015 (1992).

[8]A 3-part test is outlined in *Yakima Cy. Deputy Sheriff's Ass'n v. Board of Comm'rs*, 92 Wn.2d 831, 601 P.2d 936 (1979), *appeal dismissed*, 446 U.S. 979, 64 L. Ed. 2d 835, 100 S. Ct. 2958 (1980). This 3-part test asks (1) whether the classification applies alike to all members within the class, (2) whether reasonable grounds support the distinction between those inside and outside the class, and (3) whether the classification is rationally related to the statute's purpose. *See Danis*, at 821 (citing *Yakima*, at 835-36).

The rational basis test is stated more simply in *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 799 P.2d 235 (1990). Under the *Omega* rational basis test, "[a] legislative classification will be upheld . . . unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives." *Danis*, at 821 (quoting *Omega*, at 431).

cited in *Danis*, we find that the challenged statute withstands the appellants' equal protection claim.[9]

Moreover, even if we were to apply the intermediate scrutiny test adopted in *State v. Lua*, 62 Wn. App. 34, 813 P.2d 588, *review denied*, 117 Wn.2d 1025 (1991) and *State v. Coria*, 62 Wn. App. 44, 813 P.2d 584, *review granted*, 117 Wn.2d 1022 (1991),[10] we would find that the statute survives the appellants' equal protection challenge. First, the class designated by RCW 69.50.435(d) is composed of recreational users within 1,000 feet of a school yard, who deliver drugs not-for-profit in a private home where children are not present. The affirmative defense applies alike to all persons in the class.

Second, there are reasonable grounds to distinguish between the members of the designated class and the appellants, drug dealers within 1,000 feet of a school yard who delivered a controlled substance for profit[11] in or near a vehicle. A vehicle is accorded a lesser expectation of privacy than a home. *See, e.g., State v. Simpson*, 95 Wn.2d 170, 185, 622 P.2d 1199 (1980) (lesser expectation of privacy for items "plainly visible through the windshield"); *Katz v. United States*, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (no Fourth Amendment protection for what a "person

---

[9]Our analysis as to the more restrictive intermediate scrutiny test, *infra*, fully supports the conclusion that the minimal scrutiny test has been satisfied as well.

[10]Under the intermediate scrutiny test, "the court determines whether (1) the legislation applies alike to all members within the designated class; (2) there are reasonable grounds to distinguish between those within and those outside the class; and (3) the classification may be fairly viewed as furthering a substantial interest of the State." *Coria*, at 50-51.

[11]The appellants imply that because they acted as intermediaries for the drug dealers and the money and the drugs exchanged hands at different times, the drug transactions were not for profit. We disagree. A drug transaction cannot be characterized as not-for-profit merely because the intermediary received the money, walked 20 to 30 yards away from the buyer, and returned with the controlled substance.

knowingly exposes to the public"). In addition, the Legislature could rationally decide that drug transactions for profit in public areas adjacent to school yards would create a greater risk of drug activity for school children than private, nonprofit recreational use where children are not present. Thus, there are reasonable grounds to distinguish between the classes of persons affected by the statute.

Third, the classification furthers a substantial state interest. The purpose of RCW 69.50.435 is to "enhance the penalty for drug *trafficking* as it affects persons under 18[.]" (Italics ours.) *Coria*, at 52. The "school zone" statute accomplishes this purpose under RCW 69.50.435(a). In addition, the statute provides an affirmative defense under RCW 69.50.435(d) for recreational users who deliver not-for-profit in private homes where children are not present. The classification designated under RCW 69.50.435(d) furthers the state interest in only enhancing the penalty for drug trafficking which has the potential to affect children. The judgments and sentences of the Superior Court are affirmed.

GROSSE, C.J., and FORREST, J., concur.

Review denied at 120 Wn.2d 1028 (1993).