[No. 28793-1-I.   Division One.   December 31, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLIE THOMAS, *Appellant*.

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Wall, Deputy,* for respondent.

AGID, J. — Charlie Thomas appeals the judgment and sentence entered against him for one count of unlawful possession of a controlled substance with the intent to manufacture or deliver it within 1,000 feet of the perimeter of school.

grounds.[1] He contends that the admission of certain evidence violated ER 404(b), the evidence as a whole was insufficient to show he intended to deliver the cocaine within 1,000 feet of the perimeter of school grounds, RCW 69.50.435(a) (the schoolyard statute) violates due process by creating an irrebuttable presumption, and prosecutorial misconduct deprived him of a fair trial. Thomas also alleges in his pro se brief that his speedy trial rights were violated, the jury instructions unconstitutionally eliminated the State's burden of proving intent, an instruction failed to define "delivery", the trial court erroneously instructed the jury on two alternate theories, and he was denied effective assistance of counsel.

At approximately 8 p.m. on June 1, 1990, Seattle Police Officers Howard and Hay were conducting surveillance of the China Express restaurant on South Jackson Street for suspected drug activity. The restaurant is situated within 1,000 feet of Washington Middle School.[2] With the aid of binoculars, both officers saw a man, later identified as Charlie Thomas, outside the restaurant engaging in activities that resembled drug transactions.

In the first transaction, a man approached Thomas and conversed briefly with him. Thomas reached into his left jacket pocket and removed a small white pill bottle. He then removed the cap, shook a small item into his palm, and held his upturned palm at chest level. The other man took the item and

---

[1]Thomas also pleaded guilty to one count of bail jumping but does not appeal that conviction.

[2]At trial, the property manager for the Seattle School District identified the boundaries of the Washington Middle School grounds on a map. An engineering specialist from the Seattle Engineering Department later measured the distance on the map from one edge of the school grounds to a specific point on the map, then measured the distance between another edge of the school grounds to the same point. The distances were 500 and 800 feet, respectively. Although the "point" was not identified, the context of the testimony indicates that it represented the China Express restaurant. In her brief, Thomas' counsel clearly interpreted the testimony in that way, and there was no testimony to the contrary at trial.

put it into his mouth, then placed it into his pocket and gave Thomas currency. Thomas put the money and the bottle into his pocket and both men left. The second transaction involved several people. The officers saw Thomas receive currency from three men who appeared to be "runners". After pocketing the money, Thomas tapped some of the contents of the pill bottle into each man's palm. Later, a woman approached Thomas outside the restaurant and conversed with him briefly. Thomas shook a small object from the pill bottle into her palm, and she gave him money. Thomas then returned the pill bottle to his pocket and entered the restaurant.

The officers concluded that those actions were drug sales and called for backup. They located Thomas inside the restaurant, asked him for identification, and took him outside. According to Officer Hay, Thomas appeared very nervous. As Thomas and Officer Hay left the restaurant, Thomas began running away. Hay grabbed Thomas' coat. The coat ripped, and Hay grabbed Thomas' pants, which also ripped. Two other officers attempted to handcuff Thomas, and a struggle followed during which one of the officers hit Thomas with a baton.

Once the police handcuffed Thomas, they searched him and found in his coat pocket a pill bottle containing 95 "hits" of rock cocaine. The officers also found a baggie of cocaine, later valued at $400, in Thomas' pants pocket. In addition, Thomas had more than $400 in cash and a pager. Thomas was subsequently charged with possessing cocaine with intent to manufacture or deliver in violation of RCW 69.50.401(a) and with violating RCW 69.50.435(a), the schoolyard statute.

During trial, several officers testified to these events and identified the baggie and cocaine-filled pill bottle. Thomas testified that he had been working with a construction company as a carpenter and had just been paid $800 the day he was arrested. He bought the baggie of cocaine for $400, leaving approximately $400 (including one $100 bill) in his pocket. He said that the cocaine was for his personal use and that he bought a large amount because he needed

enough to last a week until his next paycheck. Thomas denied that he sold or intended to sell drugs and denied that the money came from selling drugs. He also claimed that he did not know how the pill bottle came to be in his coat pocket. According to Thomas, he parked his car at the China Express that night and went directly into the restaurant.

Thomas also described his arrest as being much more brutal than did the officers. He stated that after the officers led him outside, one of them "slammed" him up against the police car. He denied trying to flee, but he said he instinctively pushed the officer away from him, after which all six of the officers began beating and choking him. His coat was torn off of him, and he saw an officer pick it up from the ground. Thomas was later taken to Harborview hospital.

The jury found Thomas guilty of the crime of possession with intent to deliver and found, through a special verdict, that he committed that crime within 1,000 feet of the perimeter of school grounds in violation of RCW 69.50.435(a). Thomas' standard range was 26 to 34 months plus a 24-month sentence enhancement[3] for a total sentence of 50 to 58 months. From the judgment and sentence entered against him, Thomas appeals.

# I

The first issue that Thomas raises is whether the trial court violated ER 404(b) by admitting the police officers' testimony about his alleged activities outside the restaurant that night. He argues that the evidence was not legally relevant.

■ ER 404(b) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[3]Pursuant to RCW 9.94A.310(5), "[a]n additional twenty-four months shall be added to the presumptive sentence for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435."

Whether to admit or refuse evidence is a discretionary decision of the trial court that will not be reversed on appeal absent an abuse of discretion. *State v. Laureano*, 101 Wn.2d 745, 764, 682 P.2d 889 (1984).

As *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982) explains:

> evidence of prior crimes, wrongs, or acts must be closely scrutinized and admitted only if it meets two distinct criteria. First, the evidence must be shown to be logically relevant to a material issue before the jury. We have expressed the test as "whether the evidence as to other offenses is relevant and necessary to prove an essential ingredient of the crime charged." Second, if the evidence is relevant, its probative value must be shown to outweigh its potential for prejudice.

(Citations omitted.) Logical relevance is demonstrated if the identified fact for which the evidence is to be admitted is "of consequence to the outcome of the action" and tends to make the existence of the identified fact more or less probable. *Saltarelli*, 98 Wn.2d at 362-63. Evidence is legally relevant if its probative value outweighs its prejudicial effect under ER 403. 98 Wn.2d at 363. Regardless of logical and legal relevance, however, evidence may not be admitted simply to prove the character of the accused in order to show that he or she acted in conformity with it. 98 Wn.2d at 362.

In this case, the officers' testimony indicated that Thomas appeared to be selling drugs in three separate incidents outside the restaurant before he was arrested. That evidence logically relates directly to the material issue of what Thomas intended to do with the cocaine he possessed when he was arrested. *See State v. Hubbard*, 27 Wn. App. 61, 64, 615 P.2d 1325 (1980) (evidence of defendant's prior drug sales was relevant to rebut his denial of an intent to sell a controlled substance). In addition, the officers' testimony tends to make it more probable that Thomas intended to deliver the cocaine he possessed. It also provided the jury with a complete picture of what occurred that evening. *See State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981) (the "unbroken sequence of incidents" leading up to the alleged commission of a crime "were necessary to be

placed before the jury in order that it have the entire story of what transpired on that particular evening").

Although the officers' testimony was prejudicial to Thomas, it was not unduly or unfairly prejudicial. ER 403. It was also highly probative of what Thomas intended to do with the cocaine, and its probative value greatly outweighed the prejudicial effect. Thus, the trial court properly admitted the officers' testimony under ER 404(b).

## II

The second issue raised is whether the phrase "within one thousand feet of the perimeter of the school grounds" in RCW 69.50.435(a) modifies "deliver" or "possessing".[4] Thomas relies on *United States v. Liranzo*, 729 F. Supp. 1012 (S.D.N.Y. 1990), a case involving the federal "schoolyard statute", to argue that the phrase modifies "deliver". If that interpretation of the statute is correct, he concludes that there was insufficient evidence to support a finding that he possessed the cocaine with the intent to deliver it within 1,000 feet of the school grounds.

The issue presented in *Liranzo* was whether 21 U.S.C. § 860(a)[5] applied to a defendant who possessed a narcotic within 1,000 feet of a school but clearly intended to distribute it much farther away. 729 F. Supp. at 1013. The court held that the statute was ambiguous, and the most logical

---

[4]RCW 69.50.435(a) provides in pertinent part:

"Any person who violates RCW 69.50.401(a) by manufacturing, selling, delivering, or possessing with the intent to manufacture, sell, or deliver a controlled substance . . . to a person in a school or . . . within one thousand feet of the perimeter of the school grounds, . . . may be punished by a fine of up to twice the fine otherwise authorized by this chapter, . . . or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter, . . . or by both such fine and imprisonment."

[5]21 U.S.C. § 860(a) reads in pertinent part:

"Any person who violates section 841(a)(1) of this title or section 856 of this title by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, . . . is . . . subject to (1) twice the maximum punishment".

reading was that it was meant to apply to persons who possess a narcotic within 1,000 feet of a school *and also* intend to distribute that narcotic within 1,000 feet of the school. Thus, the statute would not apply to someone possessing a narcotic within 1,000 feet of the school but intending to distribute it outside the 1,000-foot boundary. One of the bases for the court's holding was that its construction was the "more natural reading" of the statute. The words "within one thousand feet of" should, it reasoned, modify the verb closest to them which, in the federal statute, was "to distribute" rather than "possessing". *Liranzo*, 729 F. Supp. at 1014. The court also found support for its construction in the rule that any ambiguity in a criminal statute should be construed in favor of the accused. *Liranzo*, 729 F. Supp. at 1014.

██ The Washington schoolyard statute is not ambiguous. The only logical way to interpret our statute is that the phrase in question modifies the word or phrase chosen by the Legislature to define each of the four possible ways of violating RCW 69.50.401(a); *i.e.*, by manufacturing or delivering a controlled substance or by possessing a controlled substance with the intent to either manufacture or deliver.[6] Because the entire statutory phrase "possess with intent to . . . deliver" is one means of violating RCW 69.50.401(a), the language in the schoolyard statute "within one thousand feet of the perimeter of the school grounds" must be read to modify the entire phrase it uses to define the crime, not just the last word — "deliver" — in the phrase. The location of the delivery the defendant intends to make is not the issue. Instead, the question for the jury is whether, at the time Thomas possessed the cocaine within 1,000 feet of the school, he also intended to deliver it.

██ The trial testimony indicated that the China Express restaurant was within 1,000 feet of the perimeter of the

---

[6]RCW 69.50.401(a) reads: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance."

Washington Middle School grounds, and Thomas testified that he possessed a baggie of cocaine worth $400 while at the China Express. The officers testified that Thomas also possessed a bottle containing 95 hits of rock cocaine when he was arrested and engaged in activity consistent with drug sales prior to his arrest. Thus, the evidence is sufficient for a reasonable juror to conclude that Thomas possessed cocaine with intent to deliver within 1,000 feet of the perimeter in violation of RCW 69.50.435(a). *See State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (the test to determine the sufficiency of the evidence is "whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements [of the crime] *beyond a reasonable doubt*").

### III

The third issue that Thomas raises on appeal is whether RCW 69.50.435(a) violates his due process rights by creating an irrebuttable presumption that the delivery of a controlled substance within 1,000 feet of a school harms children. *State v. Dobbins*, 67 Wn. App. 15, 834 P.2d 646 (1992), however, completely resolves that issue by its holding that RCW 69.50.435(a) does not violate due process by creating an irrebuttable presumption. *Dobbins*, 67 Wn. App. at 21.[7] We concur in that conclusion.[8]

### IV

■ Finally, Thomas contends that the prosecutor engaged in misconduct during cross examination. However, we see no basis in the record for that contention. Moreover, because Thomas' trial attorney properly made no objections to the argument that he alleges constituted misconduct, Thomas is precluded from raising the issue on appeal. *See State v.*

---

[7]*See also State v. Coria*, 120 Wn.2d 156, 839 P.2d 890 (1992) (rejecting constitutional vagueness, due process and equal protection challenges to RCW 69.50-.435).

[8]Similarly, there is no merit in Thomas' argument that the statute precluded him from presenting a statutory defense pursuant to RCW 69.50.435(d).

*Thetford*, 109 Wn.2d 392, 397, 745 P.2d 496 (1987). We have reviewed each of the other issues that Thomas raises in his pro se brief and conclude that none has merit.

The judgment and sentence of the trial court are affirmed.

COLEMAN and PEKELIS, JJ., concur.

Review by Supreme Court pending March 1, 1994.