[No. 29974-3-I.    Division One.    May 2, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER
ULYSSES VINSON, *Appellant.*

*Constance Marie Krontz* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Ann M. Foerschler, Deputy,* for respondent.

AGID, J. — Peter Vinson appeals the enhancement of his sentence for delivery of a controlled substance and the trial court's refusal to give the jury his proposed entrapment instruction. We affirm.

## I

### FACTS

On September 18, 1991, Seattle Police Officer Ng was participating in an undercover buy-bust operation at the intersection of 3rd and Yesler in Seattle. Ng approached a bus shelter at the intersection and made contact with Melancon, a man standing nearby. Ng asked Melancon for "soup", a street term for rock cocaine. Melancon asked Ng how much he wanted and Ng responded "twenty". Melancon said he would get it and told Ng to stay there. Melancon returned with Vinson walking behind him. All three men stood in the bus shelter. Ng asked Melancon if he "got it" and Melancon pointed to Vinson. Vinson told Ng to give him the money. When Ng did so, Vinson spit something out of his mouth onto the ground. Ng picked up the object, which was later identified as rock cocaine. Vinson and Melancon were arrested shortly after the transaction.

Vinson was found guilty of delivery of a controlled substance in violation of RCW 69.50.401(a)(1). The jury returned a special verdict finding that the delivery was made in a public transit stop shelter. Vinson was sentenced to 50 months in prison, including a 24-month sentence enhance-

ment pursuant to RCW 69.50.435 and RCW 9.94A.310(5)[1] because the delivery took place in a public transit stop shelter. This appeal followed.

## II

### CONSTITUTIONALITY OF THE PUBLIC TRANSIT STOP PROVISION

The first issue we address is whether the sentence enhancement for delivery of drugs in a public transit stop is unconstitutional. Vinson challenges the provision on the ground that it violates his right to equal protection. The standard of review for equal protection challenges to RCW 69.50.435 is the rational basis test. *State v. Coria*, 120 Wn.2d 156, 170, 839 P.2d 890 (1992). Under this standard, a legislative classification is constitutional " 'unless it rests on grounds wholly irrelevant to the achievement of legitimate state objectives.' " 120 Wn.2d at 171 (quoting *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wn.2d 416, 431, 799 P.2d 235 (1990)). Statutes are presumed constitutional, *State v. Lua*, 62 Wn. App. 34, 38, 813 P.2d 588, *review denied*, 117 Wn.2d 1025 (1991), and a party challenging a statutory classification has the burden of showing that it is " 'purely arbitrary' ". *Coria*, 120 Wn.2d at 172 (quoting *Omega*, 115 Wn.2d at 431).

Vinson contends that enhancing penalties for delivering drugs in a transit shelter promotes no legitimate state interest. He argues that, if the purpose of RCW 69.50.435 is to reduce the incidents of drug dealing in and around areas frequented by schoolchildren, the inclusion of transit shelters in the statute is not rationally related to this goal because they do not frequent these areas. He also asserts that, if the goal of the enhancement provision is to protect members of the general public who use public transportation, there is no reasonable basis for distinguishing between sheltered and unsheltered transit stops.

---

[1] RCW 69.50.435(a) provides in relevant part that "[a]ny person who violates RCW 69.50.401(a) . . . in a public transit stop shelter may be punished . . . by imprisonment of up to twice the imprisonment otherwise authorized by this chapter". RCW 9.94A.310(5) requires the enhancement of the presumptive sentence under RCW 9.94A.310(1) by 24 months for any violation of RCW 69.50.435.

■ No Washington case has considered the constitutionality of this particular provision of RCW 69.50.435. Equal protection challenges to other provisions of the statute, however, have been unsuccessful.[2] The cases rejecting equal protection challenges to other provisions of RCW 69.50.435 have done so on the ground that the sentencing enhancement provision is rationally related to the State's legitimate interest in protecting schoolchildren from activities associated with drug trafficking.[3] The bus shelter provision at issue here can be upheld both on that basis or on much broader grounds, *i.e.*, that the State has a legitimate interest in protecting the public's enjoyment of and access to certain public areas through sentence enhancement.[4] Under either analysis, it is rationally related to a legitimate state goal.

*State v. Carter,* 64 Wn. App. 90, 823 P.2d 523 (1992) addressed the public park provision of the statute. The court reasoned, based on *Lua,* 62 Wn. App. at 41, that the State has a "substantial interest in protecting children from drug traffickers and the criminal activities associated with their presence", activities such as "[d]rug paraphernalia, litter, residue, and even drug 'stashes' (hidden in containers in the grass)." *Carter,* 64 Wn. App. at 93-94 & n.2. That purpose,

---

[2]*See, e.g., Coria* (school bus route stop classification rationally related to the State's legitimate goal of keeping drug dealers away from schoolchildren); *State v. Dobbins,* 67 Wn. App. 15, 834 P.2d 646 (1992) (affirmative defense for deliveries within 1,000 feet of a schoolyard, if delivery occurs in a private home, is not for profit, and children are not present, rationally related to State's interest in enhancing the penalty for drug trafficking that has the potential to affect children), *review denied,* 120 Wn.2d 1028 (1993); *State v. Henderson,* 64 Wn. App. 339, 824 P.2d 492 (enhanced penalty for selling drugs in a public park does not violate due process or equal protection guaranties), *review denied,* 119 Wn.2d 1004 (1992); *State v. Carter,* 64 Wn. App. 90, 823 P.2d 523 (1992) (public park provision of statute does not violate equal protection under either rational basis or intermediate scrutiny test).

[3]*See* cases cited in footnote 2. *See also Lua,* 62 Wn. App. at 40 ("[p]resumably, the purpose of the enhanced penalty statute is to protect children from drug traffickers and other criminal activities that may result from their presence").

[4]The reasons supporting a legislative enactment need not be those actually considered by the Legislature. It is sufficient if the court can conceive of a state of facts that would support the classification. *State v. Shawn P.,* 122 Wn.2d 553, 563-64, 859 P.2d 1220 (1993).

the court noted, "may be furthered by recognizing and extending greater protection to areas where children are more likely to congregate." 64 Wn. App at 94.

The analysis in *Carter* is equally applicable to transit shelters. The Legislature may well have determined that children are likely to congregate at sheltered transit stops on their way to and from school and other activities for which they use bus transportation. It may also have concluded that enclosed transit shelters attract drug trafficking and that the activities connected with drug sales would be detrimental to the general public's use and enjoyment of transit facilities. Both are legitimate state goals, and the Legislature's attempt to deter drug sales in bus shelters by enhancing the penalty for activity in those places is a legitimate means of achieving those goals. Under either factual predicate, the provision is rationally related to a legitimate state end, and reasonable grounds exist to distinguish between people who deliver drugs in a transit shelter and those delivering them elsewhere.[5] We therefore hold that RCW 69.50.435(a) is constitutional, and decline to reverse Vinson's conviction on this basis.

## III

### ENTRAPMENT INSTRUCTION

Vinson also assigns error to the trial court's refusal to give his proposed entrapment instruction to the jury. We decline to decide whether an entrapment instruction can ever be given as a defense to an enhancement allegation because Vinson failed to offer sufficient evidence to support

---

[5]*See Lua*, 62 Wn. App. at 39 ("Legislature has wide discretion in defining a class, and when the class is challenged, facts are presumed to support the class"). This analysis would also apply to Vinson's contention that there is no reasonable basis for distinguishing between sheltered transit stops and unsheltered transit stops. The Legislature may have determined that the former are likely the most heavily used. This fact alone is a rational basis for enhanced protection of children and adults using the shelters for the purpose for which they were constructed. Alternatively, the Legislature may have determined that drug trafficking in an enclosed, confined space, such as a sheltered stop, presents certain dangers not posed by the same activity in an open, unsheltered stop because activities carried out in the former would be easier to conceal and more difficult for transit users, including children, to avoid.

this theory. Thus, even if entrapment were a defense to a sentence enhancement, he would nevertheless not be entitled to the instruction in this case. Evidence to support an instruction is sufficient where "the jury could reasonably infer the existence of the facts needed to use it." *State v. Yates*, 64 Wn. App. 345, 351, 824 P.2d 519, *review denied*, 119 Wn.2d 1017 (1992). Vinson's evidence consisted of his testimony that he originally did not want to enter the transit shelter to conduct the transaction, but did so only after Ng insisted.[6] Standing alone, this evidence is not sufficient for a jury to reasonably infer that Vinson was entrapped into entering the transit shelter.

■ In order to establish the defense of entrapment, the defendant must show that:

(a) The criminal design originated in the mind of law enforcement officials, or any person acting under their direction, and

(b) The actor was lured or induced to commit a crime which the actor had not otherwise intended to commit.

(2) The defense of entrapment is not established by a showing only that law enforcement officials merely afforded the actor an opportunity to commit a crime.

RCW 9A.16.070. An officer's use "of a normal amount of persuasion to overcome this expected resistance [to selling drugs] does not constitute entrapment and will not justify an entrapment instruction." *State v. Waggoner*, 80 Wn.2d 7, 11, 490 P.2d 1308 (1971); *see also State v. Smith*, 101 Wn.2d 36, 42-43, 677 P.2d 100 (1984). "[A]n officer may, when acting in good faith, make use of deception, trickery or artifice." *State v. Gray*, 69 Wn.2d 432, 434, 418 P.2d 725 (1966).

No case has held that a single request by an undercover officer that a defendant engage in an illegal transaction is sufficient to constitute entrapment. Ng's insistence that Vinson join him in the bus shelter is well within the "normal amount of persuasion" an officer is permitted to use. Thus,

---

[6]Vinson testified that he told Ng he wanted to conduct the transaction away from the transit shelter, around the corner from where they were standing. He testified Ng insisted upon conducting the transaction where they were, stating "No, let's go right here. Let's do it right here. I've got to go. I'm in a hurry." Vinson then joined Ng in the transit shelter.

the evidence was insufficient to support Vinson's proposed instruction, and the trial court properly refused to give it to the jury.

We affirm.

PEKELIS, A.C.J., and GROSSE, J., concur.

Review denied at 125 Wn. 2d 1002 (1994).